UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re LEONARD JOHNSON,

        Debtor.

_____/

JIMMIE WASHINGTON,

        Appellant,               Case No. 2:25-cv-11756

v.                              Honorable Susan K. DeClercq
                               United States District Judge

DAVID WM RUSKIN, *Trustee*, and
RIVER PARK PLACE CONDOMINIUM
ASSOCIATION,

        Appellees.

_____/

**OPINION AND ORDER DISMISSING BANKRUPTCY APPEAL (ECF No. 1), DENYING AS MOOT APPELLANT'S MOTIONS (ECF Nos. 21; 22), AND CLOSING CASE**

From 2021 through 2024, Appellant Jimmie Washington, a licensed attorney, represented Debtor Leonard Johnson in state court litigation. Soon after the state court litigation ended, Johnson filed for bankruptcy, and in May 2025, the United States Bankruptcy Court for the Eastern District of Michigan entered an order confirming Johnson's Chapter 13 bankruptcy plan ("the Plan Confirmation Order"). Among other things, the Plan Confirmation Order required Leonard to "use his best

efforts" to engage an attorney to bring a legal malpractice claim against Washington, who had represented him in state court proceedings.

A few weeks later, Washington filed an appeal of the Plan Confirmation Order. But, as explained below, Washington's appeal will be dismissed because he lacks standing to challenge the confirmation of Leonard's Chapter 13 bankruptcy plan.

## I. BACKGROUND

From 2021 to 2024, Debtor Leonard Johnson was involved in state court litigation against Appellee River Park Place Condominium Association ("the Association").[1] *See* ECF No. 9 at PageID.722–23. A settlement in the state court matter was reached and placed on the record on April 8, 2024. *In re Johnson*, No. 24-51353, 2025 WL 1920452, at *2 (Bankr. E.D. Mich. July 11, 2025). But eight months later, Leonard filed petitions for Chapter 13 bankruptcy before paying the settlement amount to the Association. *See id.* at *3.

In January 2025, the Association timely filed a claim[2] in Leonard's bankruptcy case for the state court settlement amount plus interest. *See id.* The next month,

---

[1] Although the Association was originally named as a Defendant in the state court litigation (along with Leonard and Rahjinah), the Association was later "substituted as a plaintiff in place of the original four individual plaintiffs." ECF No. 11 at PageID.754.

[2] In the context of a bankruptcy proceeding, a claim is any right to payment that a creditor holds against a debtor. *See* Erin Berry, Note, *Bankruptcy Law—A Battle of Two Acts:* Midland Funding, LLC v. Johnson, 137 S. Ct. 1407 (2017), 18 Wyo. L.

Washington—the attorney who represented Leonard in the state court litigation—objected to the Association's claims, despite not representing Leonard in bankruptcy court and having "no pecuniary interest" in his bankruptcy proceeding.  *Id.* at *3–4.

At a claim objection hearing on April 10, 2025, the Bankruptcy Court "denied/overruled" Washington's objections to the Association's claims. *Id.* at *4. The Bankruptcy Court reasoned that Washington's objections were barred by the *Rooker-Feldman* doctrine and that Washington lacked standing to pursue an objection to the Association's claims against Leonard. *Id.* at *4–6. On May 28, 2025, the Bankruptcy Court issued an order confirming Leonard's Chapter 13 plan ("the Plan Confirmation Order"),  *see* ECF No. 1 at PageID.6–7, which included a provision that Leonard was required to "use his best efforts to engage the services of an attorney" to litigate a possible legal malpractice claim against Washington. *Id.* at PageID.6. The provision reads, in whole:

> IT IS FURTHER ORDERED that any recovery received by the Debtor [Leonard Johnson] from a legal malpractice claim against former attorney Jimmie Washington must be given to the Trustee for payment to allow unsecured claims as specified in the plan in addition to [Leonard's] plan payments.  [Leonard] shall use his best efforts to engage the services of an attorney to handle the legal malpractice claim within 30 days of the entry of this Order and fully cooperate with such attorney.  However, if [Leonard] is unable to secure the services of a legal malpractice attorney within that timeframe, he shall provide a

---

REV. 237, 242 (2018) (quoting 11 U.S.C. § 101(5)(A)). "A proof of claim is a written statement of a creditor's claim" in a bankruptcy case. FED. R. BANKR. P. 3001(a). Filing a proof of claim allows a creditor to recover the debt owed by the debtor from the bankruptcy estate. *See* Berry, *supra* note 2 at 242.

written affidavit to counsel for River Park Place Condominium Association which sets forth his attempts to secure counsel and the reason(s) for his inability to secure counsel as ordered by the Court. The affidavit shall be provided to counsel for River Park Place Condominium Association no later than 45 days from the entry of this Order.

*Id.*

On June 12, 2025, Washington filed this appeal of the Plan Confirmation Order. *See* ECF No. 1. Oddly, Washington states in his brief that he "is not challenging the PLAN itself but is challenging the Orders within the PLAN that adjudicated [Washington] for committing attorney malpractice in the State Court case without due process[,] notice[,] or hearing." ECF No. 23 at PageID.1092. To that end, it appears Washington takes issue with the Plan Confirmation Order language directing Leonard to use his best efforts to obtain counsel for the purpose of pursuing a legal malpractice claim against Washington. *See id.* at PageID.1107–14. The Association responds that Washington does not have standing to appeal the Plan Confirmation Order and even if he did, the Bankruptcy Court did not err in its decision. ECF No. 25.

## II. LEGAL STANDARD

### A. Appellate Review

The district court sits as an appellate court when reviewing decisions of a bankruptcy court. 28 U.S.C. § 158. Parties may appeal by right from "final judgments, orders, and decrees" of bankruptcy courts "in cases and proceedings."

- 4 -

28 U.S.C. § 158(a). Congress's use of the word "proceedings" in § 158(a) makes bankruptcy court orders immediately appealable "if they finally dispose of discrete disputes within the larger [bankruptcy] case." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006)). When a bankruptcy court order is appealed, the bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, and its legal conclusions are reviewed de novo. *B-Line, LLC v. Wingerter*, 594 F.3d 931, 935–36 (6th Cir. 2010).

## B. Standing to Appeal

"A distinctive standard—the 'person aggrieved' doctrine—applies to assess standing in appeals from the bankruptcy court, 'in which the question is whether the party who appealed the bankruptcy court's order was sufficiently aggrieved by that order.'"[3] *In re Murray Energy Holdings Co.*, 624 B.R. 606, 611 (B.A.P. 6th Cir.

---

[3] Several circuit courts—including the Sixth Circuit—have noted "there is good reason to believe [the person aggrieved doctrine] is no longer good law" in light of the Supreme Court's decision of *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). *See In re Schubert*, No. 21-3969/3983, 2023 WL 2663257, at *2 (6th Cir. Mar. 28, 2023); *see also In re Cap. Contracting Co.*, 924 F.3d 890, 896–97 (6th Cir. 2019) (explaining the legal landscape underlying the person aggrieved doctrine before and after *Lexmark*). Nevertheless, because the Sixth Circuit has not yet directly considered the question of what effect, if any, *Lexmark* has on the person aggrieved doctrine, it "remains precedential in this Circuit," and bankruptcy appellate courts continue to apply it, especially when its application is not disputed by the parties. *In re Baum*, 677 B.R. 346, 353 (E.D. Mich. 2025) (collecting cases); *see also In re Hum. Hous.*, 666 B.R. 332, 345 (B.A.P. 6th

2021) (citation omitted). "The doctrine has been exclusively invoked to limit which parties may initiate appeals from the bankruptcy court to the district court or the Bankruptcy Appellate Panel." *Id.* at 611–12 (internal quotation marks and citation omitted).

"Appellate standing under the 'person aggrieved' doctrine"—sometimes called the person aggrieved test—"is narrower than Article III standing" and more limited than standing in the bankruptcy court. *Id.* at 612. Indeed, the person aggrieved doctrine limits appellate standing to only those "persons with a direct, pecuniary interest in the bankruptcy court's order, which has been interpreted to mean the order directly diminishes a person's property, increases his burdens, or impairs his rights." *Id.* (internal quotations and citation omitted); *see also In re Hum. Hous.*, 666 B.R. 332, 345 (B.A.P. 6th Cir. 2025) (holding that "[t]he appellant must be directly and adversely affected pecuniarily by the order" (internal quotations and citations omitted)).

---

Cir. 2025) ("The 'person aggrieved' doctrine applies to assess standing in appeals from a bankruptcy court."); Mike Paek, *Is the Person-Aggrieved Appellate Standing Test Still Viable?*, 42-JUN AM. BANKR. INST. J., 34, 64 (2023) (noting that post-*Lexmark*, there are several viable ways a bankruptcy appeals court could determine whether an appellant has standing, including the traditional person-aggrieved test). Thus, considering the current state of the law regarding the person aggrieved test, and because the Parties do not dispute the test's application, *see generally* ECF Nos. 23; 26; 27, this Court will apply the person aggrieved doctrine to this case.

"Determining whether an appellant is a person aggrieved is a question of fact for the district court, or as applicable, the bankruptcy appellate panel." *Id.* (citing *Fid. Bank, Nat'l Ass'n v. M.M. Grp., Inc.*, 77 F.3d 880, 882 (6th Cir. 1996)). It is the appellant's burden to prove that the appellant is a person aggrieved by the bankruptcy order they are appealing. *Id.*

### III. DISCUSSION

Washington's appeal of the Bankruptcy Court's Plan Confirmation Order will be dismissed because he was not a person aggrieved by the Plan Confirmation Order, so he lacks standing to appeal it.[4] True, the Plan Confirmation Order directed Leonard to use his best efforts to obtain counsel in order to pursue a legal malpractice claim against Washington. *See* ECF No. 1 at PageID.6. But it only did so after Leonard identified a possible legal malpractice claim against Washington as an asset of his bankruptcy estate. *See* ECF No. 25-5 at PageID.1159. And directing Leonard to secure counsel to investigate—and perhaps pursue—a possible legal malpractice claim as an asset of a bankruptcy estate does not "directly and adversely" financially affect Washington. *In re LTV Steel Co., Inc.*, 560 F.3d 449, 452 (6th Cir. 2009) (quoting *In re Julien Co.*, 146 F.3d 420, 423 (6th Cir. 1998)). Importantly, even if

---

[4] Although the Association made this argument in its brief, *see* ECF No. 25 at PageID.1133–34, Washington did not respond to it at all in his reply brief, *see* ECF Nos. 26; 27. In this way, he has not carried his burden to prove that he is aggrieved by the Plan Confirmation Order such that he has standing to appeal it.

Washington incurs costs to defend against a legal malpractice claim by Leonard, the Sixth Circuit has held that the burden of defending against a lawsuit is not the type of direct and adverse harm that qualifies someone as a person aggrieved. *See id.* at 453 (holding that a bankruptcy court order which "paved the way for" a party to sue officers and directors of the corporate debtor did not give those officers and directors standing to appeal that bankruptcy court order).

At bottom, Washington does not have standing to appeal the Bankruptcy Court's order confirming Leonard's Chapter 13 Plan. *See id.* Accordingly, Washington's appeal of that order, ECF No. 1, will be dismissed, and his pending motions, ECF Nos. 21; 22, will be denied as moot.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Washington's Plan Confirmation Appeal, ECF No. 1, is **DISMISSED**.

Further, it is **ORDERED** that Washington's pending motions, ECF Nos. 21; 22, are **DENIED AS MOOT**.

**This is a final order and closes the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: July 24, 2026

- 8 -